**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RANI SITTOL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> AVALONBAY COMMUNITIES, INC., <br><br> Defendant. | Case No. 2:25-cv-02124 (BRM) (JBC) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendant AvalonBay Communities, Inc. ("Defendant").[1] (ECF No. 15.) Plaintiff Dr. Rani Sittol ("Plaintiff"), individually and on behalf of all others similarly situated, filed an Opposition. (ECF No. 19.) Defendant filed a Reply. (ECF No. 31.) Having reviewed and considered the parties' submissions filed in connection with the Motion and having held oral argument on October 23, 2025 (ECF No. 44), pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss (ECF No. 15) is **GRANTED IN PART** and **DENIED IN PART**.[2]

---

[1] Defendant's "Notice of Motion to Dismiss the Complaint" and Defendant's Proposed Order only reference Rule 12(b)(6). (ECF No. 15; ECF No. 15-3.) However, Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint is based on Rule 12(b)(1) as well as 12(b)(6). (ECF No. 15-1.)

[2] The Court commends counsel for Plaintiff and Defendant on their submissions, presentations, and oral advocacy on behalf of their clients.

## I.    BACKGROUND

### A.  Factual Background

For purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added).[3]

Plaintiff and his wife are critical care medicine physicians who have a one-year-old child and live at Avalon Teaneck, an Avalon property in Teaneck, New Jersey. (Compl. (ECF No. 1) ¶ 5.)[4] Defendant is a Maryland corporation and one of the largest Real Estate Investment Trusts ("REIT") in the country. (*Id.* ¶¶ 1, 6.) Defendant is the property management company at Avalon Teaneck and a party to leases at its properties in various states, including New Jersey. (*Id.* ¶ 6.)

This action centers around an alleged "bait-and-switch" scheme in which Defendant charges its tenants renewal rent prices above market value, *i.e.*, "Renewal Premiums," that it does

---

[3] Although Plaintiff did not attach his various leases to the Complaint, Defendant attached the leases to its Motion to Dismiss. Because such leases are integral to Plaintiff's claims, which are based on alleged Renewal Premiums included in subsequent renewal leases, and Plaintiff does not dispute the authenticity of the leases, this Court will consider the contents of the leases for purposes of adjudicating Defendant's Motion to Dismiss. *See Burlington*, 114 F.3d at 1426; *see also In re Asbestos Prods. Liability Litig. (No. IV)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (noting that when considering a Rule 12(b)(6) motion, a court may consider any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document" (quoting *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993))); *Young v. Wells Fargo Auto*, No. 23-484, 2024 WL 35235, at *3 (D.N.J. Jan. 3, 2024) ("[T]he contracts are essential to Plaintiff's claims, as an allegation of a key omission or fraudulent terms make little sense without reference to the underlying documents.").

[4] ECF No. 1 is Defendant's Notice of Removal, which includes the Complaint as part of an exhibit. All references to paragraph numbers in ECF No. 1 in this Opinion refer to the paragraphs in the Complaint.

not disclose when listing apartments for rent. (*Id.* ¶ 1.) As the manager and owner of multiple Avalon apartment communities, Defendant is responsible for setting tenants' rental rates. (*Id.* ¶ 22.) Plaintiff alleges Defendant entices prospective tenants to move into apartments by advertising monthly rental rates online that substantially track fair market value. (*Id.* ¶ 2.) Defendant's website indicates those advertised rates are for "new move-ins to the community," and Defendant generally does not list such rental rates as being discounted. (*Id.* ¶¶ 27, 31.) When tenants later seek to renew their leases, Defendant charges them substantially above market rates to renew, while charging new tenants moving into comparable units roughly fair market value. (*Id.* ¶ 2.) At no point does Defendant disclose this "Renewal Premium" to its tenants. (*Id.*) Plaintiff alleges Defendant believes its tenants will pay such premiums to avoid the inconvenience and expense of moving. (*Id.*)

Plaintiff moved into a two-bedroom apartment at Avalon Teaneck in June 2020.[5] (*Id.* ¶ 47.) Under that lease, Plaintiff paid a base rent of $2,595 for a fourteen-month lease term. (Johnson Cert. (ECF No. 15-2), Ex. 1 at 6 of 205.) Subsequently, Plaintiff entered a renewal lease for a twelve-month term with a $2,714 base rent. (ECF No. 15-2, Ex. 2 at 53 of 205.) Plaintiff then entered another renewal lease for a thirteen-month term. (ECF No. 15-2, Ex. 3 at 95 of 205.) Plaintiff alleges his rent in August 2023 was $3,410. (ECF No. 1 ¶ 47.) Plaintiff contends Defendant offered him a renewal rent price of $4,129 for the same lease term while, around the

---

[5] For purposes of this Motion to Dismiss, the Court only considers allegations specific to Plaintiff. *See Tatum v. Chrysler Grp. LLC*, Civ. A. No. 10-4269, 2012 WL 6026868, at *4 (D.N.J. Dec. 3, 2012) ("On a motion to dismiss a putative class action complaint, the Court may only consider the allegations of the named plaintiffs, and not the generalized allegations of unnamed plaintiffs or putative class members." (citing *Luppino v. Mercedes–Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *4 (D.N.J. Aug. 16, 2010))).

same time, advertising online comparable units with $2,800 to $2,900 rent prices.[6] (*Id.*) However, Plaintiff ultimately entered a third renewal lease for a twenty-two-month term with a $3,607 base rent. (ECF No. 15-2, Ex. 5 at 141 of 205.)

The four leases Plaintiff entered into contain a clause entitled, "Renewed," which states:

> We may offer to renew your current Lease at any time before the end of the current Lease, but we have no obligation to do so. Your renewal lease term would begin at the end of the term of this Lease and may be on different terms from this Lease, which will be reflected by a new Lease signed by you and by us.

(ECF No. 15-2, Ex. 1 at 10 of 205; *id.*, Ex. 2 at 57 of 205; *id.*, Ex. 3 at 99 of 205; *id.*, Ex. 5 at 146 of 205.) Plaintiff alleges Defendant did not disclose to Plaintiff it would charge a Renewal Premium (ECF No. 1 ¶ 30), and Plaintiff did not expect Defendant to charge a Renewal Premium (*id.* ¶ 41). To support his interpretation, Plaintiff asserts the lease states if a tenant does not inform Defendant of its intent to renew, a month-to-month tenancy will occur at "market" rent. (*Id.* ¶ 33.) Plaintiff claims Defendant intentionally omits its intention to assess the Renewal Premium. (*Id.* ¶ 32.)

Plaintiff alleges reasonable prospective tenants, including Plaintiff, would not move into Defendant's properties if Defendant disclosed the Renewal Premium. (*Id.* ¶ 39.) Because Plaintiff

---

[6] Defendant attached an exhibit to its Motion to Dismiss with images of archived versions of its website to demonstrate the advertised prices of "allegedly 'comparable'" apartment units to Plaintiff's on or about May 28, 2023. (ECF No. 15-1 at 9.) At oral argument, Plaintiff's counsel argued Defendant's entire website history is not incorporated into Plaintiff's complaint simply because Plaintiff alleges he looked at advertisements. Such evidence, Plaintiff's counsel asserted, must be authenticated through discovery. Indeed, in his briefing, Plaintiff contests that all those units in Defendant's exhibit of its archived website are comparable to his (Pl.'s Opp. (ECF No. 19) at 27), and has alleged specific rental rates (*i.e.*, $2,800 to $2,900) for comparable units (ECF No. 1 ¶ 47). The Court is "required to accept as true all factual allegations in the complaint," *Phillips*, 515 F.3d at 228, and "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Therefore, the Court must credit Plaintiff's alleged rental rates for purposes of this Motion.

and his wife had a newborn baby as well as busy work schedules, moving out was not a viable option for them at the time, and they renewed their lease with the Renewal Premium. (*Id.* ¶ 58.) If Defendant had initially disclosed the Renewal Premium to Plaintiff, he and his family would not have moved into Avalon Teaneck. (*Id.*)

Plaintiff's complaint contains twelve counts. In the first nine counts, Plaintiff asserts claims related to alleged violations of statutes in New Jersey (Count I), California (Counts II and III), Florida,[7] Massachusetts (Count IV), New York (Counts V and VI), Washington (Count VII), Maryland (Count VIII), and Virginia (Count IX). The various statutes include: (a) the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*; (b) the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (c) the California Unfair Competition Law, Cal. Civ. Code § 1770, *et seq.*; (d) the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*; (e) the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A, § 11, *et seq.*; (f) the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*; (g) the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 350, *et seq.*; (h) the Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.010, *et seq.*; (i) the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-301, *et seq.*; and (j) the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.* Counts ten through twelve raise common law claims, including fraud (Count X), unjust enrichment (Count XI), and breach of the covenant of good faith and fair dealing (Count XII).

### B.  Procedural History

Plaintiff filed a putative class action complaint on February 19, 2025. (ECF No.1, Ex. B.)

---

[7] The Complaint does not include a "Count" heading before the Florida claim, but the Florida claim is written as a separate count. (*See* ECF No. 1 ¶¶ 103–120.)

Defendant filed a Notice of Removal on March 28, 2025. (ECF No. 1.) Defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on May 21, 2025. (ECF No. 15.) Plaintiff, individually and on behalf of all others similarly situated, filed an Opposition on July 21, 2025. (ECF No. 19.) Defendant filed a Reply on August 11, 2025. (ECF No. 31.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-3922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994)). A motion to dismiss under Rule 12(b)(1) challenging the Court's subject matter jurisdiction asserts the Court lacks "authority or competence to hear and decide the case before it." *Northlight Harbor, LLC v. United States*, 561 F. Supp. 2d 517, 520 (D.N.J. 2008) (citing Charles Alan Wright & Arthur R. Miller, 5B Federal Practice and Procedure § 1350 (3d ed. 2004)). It requires a plaintiff to bear the burden of pleading that jurisdiction is appropriate. *Id.* at 521; *see also Wright v. N.J./Dep't of Educ.*, 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction . . . to defeat a motion under 12(b)(1)."). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *See Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).

The court is tasked with determining "whether [it is] dealing with a facial or factual attack to jurisdiction." *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

"A facial attack . . . is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). The standard of review for a facial attack is the same as one "under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party." *Id.* (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).

A factual attack, however, "concerns not an alleged pleading deficiency, but rather the actual failure of [a plaintiff's] claims to comport with . . . jurisdictional prerequisites." *United States ex rel. FLFMC, LLC*, 855 F. Supp. 2d at 304 (quoting *United States ex rel. Atkinson*, 473 F.3d at 514). Unlike a facial attack, no presumption of truthfulness attaches to a plaintiff's allegations. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348. "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (alteration in original) (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)).

Here, Defendant asserts a facial 12(b)(1) challenge given it does not raise arguments concerning any of the underlying facts but rather focuses exclusively on deficiencies in the pleadings. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B.  Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a

defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss

[to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to* or *explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### C. Rule 9(b)

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is such that a defendant is provided with sufficient details to be put on notice of the "precise misconduct with which [it is] charged." *Id.* at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

### III. DECISION

Defendant seeks to dismiss each claim asserted in the Complaint. First, Defendant argues Plaintiff's claims under laws other than New Jersey's should be dismissed for lack of standing. (ECF No. 15-1 at 12–16.) Second, Defendant argues Plaintiff's claims under New Jersey law should be dismissed for failure to state a claim. (*Id.* at 16–32.) The Court addresses each in turn.

## A. Defendant's Motion to Dismiss for Lack of Standing

Defendant argues Plaintiff's claims under the laws of states other than New Jersey should be dismissed because Plaintiff lacks standing to bring claims on behalf of unnamed plaintiffs in states where Plaintiff has not suffered an alleged injury. (ECF No. 15-1 at 16.) Plaintiff contends he does have standing to bring the out-of-state claims because whether a New Jersey resident has Article III standing to assert claims under out-of-state laws is unrelated to whether Plaintiff's alleged harm is traceable to Defendant's conduct that a favorable decision would redress. (ECF No. 19 at 11.)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

Article III "standing consists of three elements." *Spokeo*, 578 U.S. at 338 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* As the party invoking federal jurisdiction, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F. 3d 834, 838 (3d Cir. 1996) (quoting *Lujan*, 504 U.S. at 561); *see also Spokeo*, 578 U.S. at 338 ("The

11

plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990))). However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

The first element of standing, establishing an "injury in fact," requires a plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). When "determining whether [p]laintiffs have suffered an invasion of a legally protected interest, [the Court] must carefully 'separate [its] standing inquiry from any assessment of the merits of the plaintiff's claim.'" *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 478–79 (3d Cir. 2018) (quoting *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017)). A "concrete" injury is "real, or distinct and palpable, as opposed to merely abstract." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 238 (3d Cir. 2011)). A "particularized" injury "must 'affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). "The injury-in-fact requirement is 'very generous' to claimants, demanding only that the claimant 'allege[] some specific, "identifiable trifle" of injury.'" *Cottrell*, 874 F.3d at 162 (quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)); *see also Mielo*, 897 F.3d at 479 ("[O]ur caselaw requires us to 'examine the allegations in the complaint from a number of different angles to see if [plaintiffs'] purported injury can be framed in a way that satisfies Article III.'" (quoting *Finkelman*, 810 F.3d at 197)).

The second element of standing, traceability, "is akin to 'but for' causation in tort and may be satisfied even where the conduct in question might not have been a proximate cause of the harm." *Mielo*, 897 F.3d at 481 (internal citations omitted) (quoting *Finkelman*, 810 F.3d at 193–

94); *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) ("This causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim." (citing *Pub. Int. Rsch. Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990))). This requirement "is not satisfied if the alleged injury is merely 'the result of the independent action of some third party not before the court.'" *Mielo*, 897 F.3d at 481 (quoting *Finkelman*, 810 F.3d at 193). Lastly, the third element of standing, redressability, "requires the plaintiff to show that it is likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *Id.* (internal quotation marks omitted) (quoting *Finkelman*, 810 F.3d at 194).

With respect to class actions, the Third Circuit has explicitly narrowed "[the] standing inquiry . . . solely on the class representative(s)." *Mielo*, 897 F.3d at 478; *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) ("We now squarely hold that unnamed, putative class members need not establish Article III standing."). Therefore, "a class action is permissible so long as at least one named plaintiff has standing." *Neale*, 794 F.3d at 364 (citing *Horne v. Flores*, 557 U.S. 433, 446 & 446 n.2 (2009); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & 264 n.9 (1977); *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)). In other words, "so long as a named class representative has standing, a class action presents a valid 'case or controversy' under Article III." *Neale*, 794 F.3d at 369. The Court must not "insert [Federal Rule of Civil Procedure] 23 issues into [its] inquiry on standing." *Mielo*, 897 F.3d at 480. Only after the Court addresses the class representatives' Article III standing can the Court analyze Rule 23's certification requirements. *See id.* at 480 (citing *Neale*, 794 F.3d at 368); *see also Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 203 (3d Cir. 2022).

The Third Circuit has stated repeatedly, "[a] plaintiff must 'demonstrate standing for each claim he seeks to press.'" *Long v. SEPTA*, 903 F.3d 312, 323 (3d Cir. 2018) (quoting *Neale*, 794 F.3d at 359). To that end, courts "do not exercise jurisdiction over one claim simply because it arose 'from the same nucleus of operative fact' as another claim." *Neale*, 794 F.3d at 359 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Indeed, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted); *see also Long*, 903 F.3d at 325 ("[A]ny harm to unnamed class members cannot constitute injury in fact."). Named plaintiffs who incur injuries under the laws of their respective states cannot assert Article III standing to pursue separate, distinct state-law claims under the laws of other states where they suffered no alleged injury. *See In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, MDL No. 2895, 2022 WL 736250, at *17, 2022 U.S. Dist. LEXIS 43561, at *47 (D. Del. Mar. 11, 2022) (holding the named plaintiffs "cannot premise Article III standing for claims outside of the [fifteen] states on the injuries allegedly suffered by putative, unnamed class members in other states").

Here, Plaintiff has standing to assert violations of state laws only in the state where he suffered an alleged injury in fact—New Jersey.[8] Plaintiff resides and leases an apartment from

---

[8] In *Neale*, the Third Circuit "h[e]ld that unnamed, putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing." 794 F.3d at 362. Although some courts have expanded *Neale* to permit named class representatives who would not traditionally have Article III standing to bring claims under the laws of states in which they neither reside nor were injured on behalf of unnamed, putative class members who may have standing, neither the Supreme Court nor the Third Circuit have made such a leap, and this Court declines to do so as well. *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755, 2023 WL 6890996, at *8 n.3 (D.N.J. Oct. 19, 2023).

14

Defendant in New Jersey. The Complaint does not allege Plaintiff was personally injured under the laws of states where he never resided or rented apartments from Defendant. Therefore, Plaintiff lacks standing to bring state-specific claims outside the one state in which he was injured, and the purported claims premised on laws of states unrepresented by Plaintiff do not present a valid "case or controversy" under Article III. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) ("Plaintiffs[] lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury."); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); *McGuire v. BMW of N. Am.*, LLC, Civ. A. No. 13-7356, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury."); *Semeran v. BlackBerry Corp.*, Civ. A. No. 15-750, 2016 WL 3647966, at *6, *6 n.10 (D.N.J. July 6, 2016) (stating "[a] named plaintiff must be a part of the class which he seeks to represent" and deciding standing issues at the pleadings stage "in light of the fact that [p]laintiff is not a member of the Multi-State Class, and because such a class would require the court to apply the substantive law from numerous other states"); *Cohen v. Subaru of Am., Inc.*, Civ. A. No. 20-08442, 2022 WL 721307, at *6 (D.N.J. Mar. 10, 2022) (dismissing plaintiffs' state specific claims to the extent they are brought on behalf of putative class members outside of the states they represent); *Robinson v. GM LLC*, Civ. A. No. 20-663, 2021 WL 3036353 at *20 (D. Del. July 19, 2021) ("Plaintiffs lack standing to assert unjust enrichment claims under the common law of states in which Plaintiffs did not suffer an alleged injury.").

While Plaintiff maintains Defendant is conflating Article III standing with the requirements of class certification, Plaintiff is drawing a distinction without a difference because "if none of the

named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Mielo*, 897 F.3d at 480 (explaining "the standing inquiry must be limited to a consideration of the class representatives themselves, after which [the court] may 'employ Rule 23 to ensure that classes are properly certified'"). The requirements for standing do not change because Plaintiff fashions his claims in a purported class. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017) ("The requirements for standing do not change in the class action context.").

Accordingly, because Plaintiff has not established standing to bring claims under laws other than the laws of New Jersey, Defendant's Motion to Dismiss for lack of standing is **GRANTED** to the extent it is premised on state-law claims brought on behalf of putative class members outside of New Jersey.[9]

### B. Defendant's Motion to Dismiss for Failure to State a Claim

#### 1. New Jersey Consumer Fraud Act

Defendant argues the Court should dismiss Plaintiff's claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq*. because Plaintiff has not pled fraud based on an omission, an affirmative act, or the violation of a regulation, and regardless, Plaintiff has not alleged any causal connection between any misrepresentation of fact and his damages. (ECF No. 15-1 at 22–32.) Defendant also argues Plaintiff has not alleged an ascertainable loss (*id.* at 32–33), and Plaintiff's fraud claims are insufficiently plead under Federal Rule of Civil Procedure 9(b) (*id.* at 20–22, 28–29). Plaintiff argues the Complaint sufficiently alleges an

---

[9] At oral argument, counsel for Defendant agreed Plaintiff has standing to bring his own New Jersey claims as well as claims of putative class members in New Jersey.

unlawful act by omission as well as affirmative misleading acts. (ECF No. 19 at 15–23.) Plaintiff also contends the Complaint sufficiently alleges a causal nexus and ascertainable loss under the NJCFA. (*Id.* at 23–26.)

A prima facie NJCFA claim requires a showing of: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the conduct and the loss. *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007). "Claims under the [NJ]CFA are required to meet the particularity requirement of Fed. R. Civ. P. 9(b)." *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 709 (D.N.J. 2010) (internal citations omitted). Again, Rule 9(b) requires plaintiffs to support their "allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story— that is, the who, what, when, where and how of the events at issue.'" *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). In other words, to "satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200.

"However, a plaintiff need not allege every material detail so long as it pleads the circumstances of the fraud with sufficient particularity to place a defendant on notice of the 'precise misconduct with which [it is] charged.'" *Aetna, Inc. v. Open MRI and Imaging of Rochelle Park, P.A.*, No. 21-20043, 2022 WL 17176934, at *4 (D.N.J. Nov. 23, 2022) (alterations in original) (quoting *Frederico*, 507 F.3d at 200). "[C]ourts have relaxed [Rule 9(b)] when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). In such circumstances, "pleaders must allege that the necessary

information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Id.* Moreover, "Rule 9(b)'s 'heightened standard is somewhat relaxed in a case based on a fraudulent omission,' rather than one based on misrepresentation." *Zabransky v. Samsung Elecs. AM. Inc.*, No. 24-2133, 2025 WL 943091, at *5 (D.N.J. Mar. 28, 2025) (quoting *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2013 WL 5574626, at *15 (D.N.J. Oct. 9, 2013)); *see also Rains v. Jaguar Land Rover N. Am. LLC*, 2023 WL 6234411, at *5 n.13 (D.N.J. Sept. 26, 2023) (noting the pleading standard is the same for statutory and common law fraud claims). "While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements still need to be alleged." *Maniscalco v. Brother Int'l. Corp. (USA)*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009).

To sustain a NJCFA claim, a plaintiff must show unlawful conduct on the part of the defendant. *Int'l Union*, 929 A.2d at 1086. Section 2 of the NJCFA prohibits:

> any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .

N.J. Stat. Ann. § 56:8-2. "Proof of any one of those acts or omissions or of a violation of a regulation will be sufficient to establish unlawful conduct under the Act." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). "[C]ourts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012) (citing *Frederico*, 507 F.3d at 202).

To state a NJCFA claim based on an affirmative act, the plaintiff need not show the defendant intended to deceive. *Cox*, 647 A.2d at 462. However, when a NJCFA claim is based on

an omission, the plaintiff must show some form of intent on the part of the defendant. *See Sarlo v. Wells Fargo Bank, N.A.*, 175 F. Supp. 3d 412, 426 (D.N.J. 2015) (explaining that "an omission or failure to disclose a material fact, if accompanied by knowledge and intent" is actionable under the NJCFA); *Cox*, 647 A.2d at 462 ("[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud.").

"The [NJ]CFA does not define what constitutes an 'ascertainable loss,' and there is no legislative history 'that sheds direct light on those words.'" *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 361 (D.N.J. 2006) (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). "The New Jersey Supreme Court has instructed, '[t]o give effect to the legislative language describing the requisite loss for private standing under the [NJ]CFA, . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss.'" *Id.* (citing *Thiedemann*, 872 A.2d at 792). In interpreting the meaning of "ascertainable loss," the New Jersey Supreme Court has "held that the loss must be quantifiable or measurable, not hypothetical or illusory." *Robey v. SPARC Grp. LLC*, 311 A.3d 463, 471 (N.J. 2024) (citation modified). "In [NJ]CFA cases alleging fraud, misrepresentation, or deception in selling or advertising, demonstrating 'either out-of-pocket loss or . . . loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages.'" *Id.* (quoting *Thiedemann*, 872 A.2d at 783).

Here, the Court finds it is appropriate to relax Rule 9(b)'s heightened pleading standard for Plaintiff's omission-based fraud claims. *See Zabransky*, 2025 WL 943091, at *5. Plaintiff has alleged sufficient facts to demonstrate a knowing omission. Plaintiff asserts: (1) "Avalon did not advise Plaintiff that it would assess the Renewal Premium" (ECF No. 1 ¶ 30); (2) "Avalon never

disclosed the Renewal Premium to Plaintiff" (*id.* ¶ 54); (3) "Avalon's leases do not disclose the Renewal Premium" (*id.* ¶ 32); and (4) "Plaintiff's lease is largely silent about renewals" (*id.* ¶ 32). As for intent, Plaintiff may satisfy his pleading obligation by alleging intent generally. *See Maniscalco*, 627 F. Supp. 2d at 500 ("[T]he heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally . . . ."). Nevertheless, Plaintiff asserts specific allegations that, when read in the light most favorable to Plaintiff, suggest Defendant's omission was intentional, including: (1) "Avalon intentionally omits its intention to charge the Renewal Premium to mislead and entice new tenants to lease from Avalon" (*id.* ¶ 32); (2) "In general, Avalon does not list advertised rental rates as discounted, a 'move-in special,' or reflecting a promotional value" (*id.* ¶ 31); (3) "Avalon carefully calculates its renewal rates at dramatic enough increases that it gains unwarranted profits but not so much that all tenants choose to bear the considerable life expense of moving" (*id.* ¶ 38); (4) "Avalon doesn't disclose . . . material information that would prevent it from attracting tenants" (*id.* ¶ 40); (5) "Avalon doesn't disclose this [Renewal Premium] upfront because it knows that if it did, prospective tenants would never sign leases with Avalon in the first place" (*id.* ¶ 55); and (6) "Avalon concealed . . . [the Renewal Premium] to induce Plaintiff and class members to enter into the lease agreements and to profit off undisclosed Renewal Premiums" (*id.* ¶ 80). Moreover, Plaintiff alleges intent through statements from Defendant's Chief Operating Officer.[10] (*Id.* ¶ 49.)

---

[10] At oral argument, Plaintiff's counsel utilized a PowerPoint presentation that displayed, among other things, the statements from Defendant's Chief Operating Officer contained in paragraph 49 of Plaintiff's Complaint. Paragraph 49 states:

> Avalon's COO Sean Breslin's statement in a recent earnings call further evidences Avalon's scheme. Breslin stated that he wasn't surprised by an increase in moveouts '[g]iven the numbers we've been pushing through,' but added 'we continue to source demand

Finally, the Court is satisfied the alleged Renewal Premium is a material fact. "To establish that information withheld was 'material,' [Plaintiff] . . . need[s] to show that 'a reasonable [person] would attach importance to its existence in determining his [or her] choice of action.'" *Coba v. Ford Motor Co.*, 932 F.3d 114, 125–26 (3d Cir. 2019) (quoting *Suarez v. E. Int'l Coll.*, 50 A.3d 75, 89 (N.J. Super. Ct. App. Div. 2012)). Plaintiff plausibly alleges that "[i]f Avalon disclosed the Renewal Premium, prospective tenants, including Plaintiff, would simply choose to lease apartments that don't assess the Renewal Premium. So Avalon doesn't disclose that material information that would prevent it from attracting tenants." (ECF No. 1 ¶ 40.) Therefore, Plaintiff has plausibly alleged unlawful conduct—here, a knowing omission—under the NJCFA.

Plaintiff has also sufficiently alleged an ascertainable loss in the form of "paying the Renewal Premiums to Avalon." (*Id.* ¶ 83.) In essence, the Renewal Premium is an overcharge that allegedly exceeds market rental rates. The Court finds that "the overcharge in question is one that can be readily quantified and thus is ascertainable within the meaning of the [NJ]CFA." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 750 (N.J. 2009); *see also Robey*, 311 A.3d at 473 ("The amount of the loss [in *Bosland*] was easily quantifiable -- the amount of the overcharge."). Defendant argues "there is no non-speculative allegation that the apartment units were not actually worth what AvalonBay charged at any point in time." (ECF No. 15-1 at 32–33.) However,

---

that is comfortable paying what we are expecting, and their income appears to support it.' AvalonBay Q3 FY 2022 Earnings Call.

(ECF No. 1 ¶ 49.) Plaintiff's counsel argued such statements add "plausibility" to the concept of the Renewal Premium. In response, Defendant's counsel attempted to contextualize those statements. However, in deciding this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Whether the statements ultimately support Plaintiff's theory is a factual question and can be developed through discovery.

"[a]lthough the loss must be ascertainable, no special specificity with regard to pleading ascertainable loss is required." *Maniscalco*, 627 F. Supp. 2d at 503 (citing *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997 (N.J. Super. Ct. App. Div. 2006); *Lamont v. OPTA Corp.*, L-2226-05, 2006 WL 1669019 (N.J. Super. Ct. App. Div. 2006)); *see also Perkins*, 890 A.2d at 1003–04 ("Here, plaintiff alleged in her complaint that she suffered an ascertainable loss. She did not allege the nature of that loss, nor was she so required at that stage. Defendant's motion to dismiss, unlike the summary judgment procedure, did not require, in order to avoid dismissal, that plaintiff provide evidential material to rebut defendant's contention that she had not sustained an ascertainable loss."). Indeed, as Plaintiff's counsel stated at oral argument, determining the market value of Plaintiff's apartment is a task for discovery. *See Albers v. Mercedes-Benz USA, LLC*, Civ. No. 16-881, 2020 WL 1466359, at *11 (D.N.J. Mar. 25, 2020) (finding an allegation of ascertainable loss sufficient at motion to dismiss stage, despite having a "plucked-from-the-air quality," because the applicable "market value . . . can be explored in discovery").

Finally, Plaintiff has alleged a causal nexus between the unlawful conduct and his ascertainable loss by asserting he would not have leased an apartment from Defendant if Defendant had disclosed the Renewal Premium. (ECF No. 1 ¶¶ 40, 81.) *See Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 303 (D.N.J. 2009) ("Such allegations, where the consumer urges that his purchase was the 'but-for' consequence of the seller's unlawful conduct, suffice under the NJCFA's causal nexus requirement." (citing *Strzakowlski v. Gen. Motors Corp.*, No. 04–4740, 2005 WL 2001912, at *7 (D.N.J. Aug. 16, 2005); *Gross v. Johnson & Johnson–Merck Consumer Pharmaceuticals Co.*, 696 A.2d 793 (N.J. Super. Ct. Law Div. 1997))). Plaintiff has therefore alleged sufficient facts to sustain an NJCFA claim at the motion to dismiss stage. Accordingly, Defendant's Motion to Dismiss Plaintiff's NJCFA claim for failure to state a claim is **DENIED**.

### 2.   Common Law Fraud

Defendant argues Plaintiff has insufficiently alleged fraud based on an omission and Plaintiff has not alleged a false statement of fact. (ECF No. 15-1 at 22–25, 28–29.) Defendant also asserts Plaintiff has not plausibly alleged he reasonably relied on any misrepresentation, and Plaintiff fails to plead Defendant had a duty to disclose. (*Id.* at 25–26, 29–30.) Defendant further contends Plaintiff's fraud claims are insufficiently plead under Federal Rule of Civil Procedure 9(b). (*Id.* at 20–22, 28–29.) Plaintiff argues he has alleged facts supporting each element of common-law fraud, and Defendant did have a duty to disclose. (ECF No. 19 at 29–30.)

The heightened pleading standard set forth in Rule 9(b) also applies to New Jersey common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to both NJCFA and common law fraud claims). *See supra* Sections II.C., III.B.1. "Common law fraud involves a more onerous standard than a claim for fraud under the [NJ]CFA." *Mason v. Costco Wholesale Corp.*, Civ. A. No. 09-361, 2009 WL 2634871, at *7 (D.N.J. Aug. 26, 2009) (citing *Cox*, 647 A.2d at 462).

> To state a claim for common law fraud under New Jersey Law, a plaintiff must allege '(1) a material misrepresentation or omission of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity or knowing the omission to be material; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'

*Zabransky*, 2025 WL 943091, at *5 (quoting *GKE Enterprises, LLC v. Ford Motor Credit Co. LLC USA*, No. 09-4656, 2010 WL 2179094, at *4 (D.N.J. May 26, 2010)).

"In the case of omissions, a plaintiff must also show a duty to disclose." *Id.* (citing *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 184 (D.N.J. 2013)). "Silence, in the face of a duty to disclose, may be a fraudulent concealment." *Warwick Dev., LLC v. McGruder*, No. A-4823-12T3, 2014 WL 2197939, at *1 (N.J. Super. Ct. App. Div. May 28, 2014) (citing *Berman v.*

*Gurwicz*, 458 A.2d 1311, 1313 (N.J. Super. Ct. Ch. Div. 1981), *aff'd o.b.*, 458 A.2d 1289 (N.J.

App. Div.), *cert. denied*, 468 A.2d 197 (N.J. 1983)). That said, "where a claim for fraud is based

on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such

disclosure is necessary to make a previous statement true or the parties share a 'special

relationship.'" *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 602–03 (D.N.J. 2016) (citing

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993)). *Argabright* further teaches

that a duty to disclose arises under New Jersey law:

> (1) when there is a fiduciary relationship between the parties; (2)
> when one party expressly reposits trust in another party, or else from
> the circumstances, such trust necessarily is implied; and (3) when
> the relationship involving the transaction is 'so intrinsically
> fiduciary that a degree of trust and confidence is required to protect
> the parties,' for example, an insurance contract.

*Argabright*, 201 F. Supp. 3d at 603 (citing *Lightning Lube*, 4 F.3d at 1185). As the *Argabright* Court

stated:

> For a duty to disclose to arise, one party must 'expressly repose[] a
> trust and confidence in the other; or else from the circumstances of
> the case, the nature of their dealings, or their position towards each
> other, such a trust and confidence in the particular case [must be]
> necessarily implied.

*Id.* (citing *Berman*, 458 A.2d at 1313).

Here, Plaintiff has not shown Defendant had a duty to disclose. Plaintiff has not alleged he

has a special relationship with Defendant or that the parties expressly or impliedly reposed trust

and confidence in each other. Indeed, "the relationship between a landlord and tenant is not a

'definite fiduciary relationship.'" *Rafter v. AvalonBay Cmtys., Inc.*, No. 23-13674, 2025 WL

669811, at *8 (D.N.J. Mar. 3, 2025) (quoting *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104,

111 (3d Cir. 1994)). The Complaint also does not allege Defendant made partial misleading

disclosures requiring correction.[11] Accordingly, Defendant's Motion to Dismiss Plaintiff's common-law fraud claim is **GRANTED**.

### 3. Unjust Enrichment

Defendant argues Plaintiff's unjust enrichment claim fails because there is an adequate remedy at law under the NJCFA and because his claim is governed by his lease with Defendant. (ECF No. 15-1 at 33–35.) Plaintiff argues unjust enrichment claims may be pled alongside, or instead of, claims seeking money damages. (ECF No. 19 at 30 – 31.) Plaintiff also contends the lease with Defendant does not address the disputed term—*i.e.*, the alleged Renewal Premium. (*Id.* at 31.)

"To establish a claim of unjust enrichment in New Jersey, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Hughes v. Panasonic Consumer Elecs. Co.*, Civ. A. No. 10-846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)). "[T]he equitable remedy of unjust enrichment is not available when there is a valid contract" between the parties. *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, Civ. A. No. 06-4449, 2009 WL 900758, at *7 (D.N.J. Mar. 31, 2009) (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)). "Furthermore, unjust enrichment 'requires [the] plaintiff show that it expected remuneration from

---

[11] Plaintiff alleges "the limited representations Avalon makes about renewal rates in the lease affirmatively suggest that it won't charge the Renewal Premium. Even month-to-month tenancies that automatically result from not informing Avalon of an intent to renew will occur at "market month to month rent[.]" (ECF No. 1 ¶ 33.) Plaintiff does not argue, and this Court does not find, that this clause constitutes a partial misleading disclosure. The month-to-month tenancy clause to which Plaintiff cites also states, "If you are or become a Month-to-Month resident your Lease will automatically be renewed on a month-to-month basis . . . . In addition, *we will have the right to increase your Rent* from time to time upon thirty (30) days' written notice to you, subject to applicable law." (*See, e.g.*, ECF No. 15-2, Ex. 1 at 11 of 205 (emphasis added).) Moreover, as Defendant's counsel stated at oral argument, the month-to-month tenancy clause does not apply to renewal tenants (*i.e.*, those who properly indicate their desire to renew their lease).

the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Hughes*, 2011 WL 2976839, at *26 (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)). Also, "a claim for unjust enrichment requires a direct relationship between the parties." *Hammer v. Vital Pharms., Inc.*, Civ. A. No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012) (citations omitted); *see also Bedi v. BMW of N. Am., LLC*, Civ. A. No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship to assert an unjust enrichment claim."). "[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998). Unjust enrichment claims premised on fraud must plead the underlying fraud with the "particularity" required by Rule 9(b). *Crete v. Resort Condos. Int'l, LLC*, Civ. A. No. 09-5665, 2011 WL 666039, at *5–6 (D.N.J. Feb. 14, 2011).

Plaintiff's NJCFA claim and the leases between Plaintiff and Defendant do not bar Plaintiff from asserting an unjust enrichment claim. The Federal Rules of Civil Procedure permit Plaintiffs to plead alternative theories of recovery. Fed R. Civ. P. 8(d)(2); *see In re K–Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (finding it would be premature to dismiss the unjust enrichment claim on a motion to dismiss as the plaintiffs were "clearly permitted to plead alternative theories of recovery"); *Maniscalco*, 627 F. Supp. 2d at 505 (finding "[a]n unjust enrichment claim may be sustained independently as an alternative theory of recovery"); *Humana Inc. v. Merck & Co., Inc.*, Case No. 23-cv-23023, 2025 WL 2538859, at *21 (D.N.J. Sept. 4, 2025) ("[Unjust enrichment] can be pled in the alternative even where there appears to be an adequate remedy at law." (citing *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008))). Moreover, although unjust enrichment is not available when a valid contract exists, Plaintiff

disputes the validly of his leases with Defendant by arguing Defendant fraudulently omitted a material fact—*i.e.*, that it charged a Renewal Premium. *See Platinum Supply Grp. LLC v. A&O USA Inc*., Civ. A. No. 24-643, 2024 WL 5197086, at *11 (D.N.J. Dec. 23, 2024) ("Plaintiff's allegations here of fraudulent inducement amount to a dispute over the validity of the contract, which further bolsters the argument that unjust enrichment could be a viable alternative remedy." (citing *JJD Elec., LLC v. SunPower Corp., Sys.*, Civ. No. 22-1275, 2024 WL 3219294, at *10 (D.N.J. June 28, 2024))).

Here, Plaintiff alleges sufficient facts to support a claim for unjust enrichment. Plaintiff asserts Defendant received a benefit, *i.e.*, leasing units and receiving a Renewal Premium, and retaining such benefit would be unjust because it was allegedly obtained through fraud. (ECF No. 1 ¶¶ 1–3, 30, 32, 41, 47, 55, 58.) Also, read in the light most favorable to Plaintiff, Plaintiff alleges he expected remuneration from Defendant when he paid the Renewal Premiums. (*Id.* ¶¶ 41, 58.) Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for unjust enrichment is **DENIED**.

### 4.  Breach of the Covenant of Good Faith and Fair Dealing

Defendant argues the Court should dismiss Plaintiff's claim for a breach of the duty of good faith and fair dealing because the lease renewal was covered by express contract terms disclaiming Defendant's obligation to renew. (ECF No. 15-1 at 35.) Defendant also asserts Plaintiff's theory regarding Renewal Premiums is unsubstantiated. (*Id.* at 35–36.) Plaintiff argues even if a contract grants a party discretion, that party must exercise the discretion in good faith. (ECF No. 19 at 31–32.)

Pursuant to New Jersey law, all contracts have an implied covenant of good faith and fair dealing, which prohibits either party from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Fields v. Thompson*

27

*Printing Co.*, 363 F.3d 259, 270 (3d Cir. 2004) (citations omitted); *see Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 395–96 (N.J. 2005); *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1145–46 (N.J. 2001). Indeed, "[t]he implied covenant is an independent duty and may be breached even where there is no breach of the contract's express terms." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) (citing *Sons of Thunder Inc. v. Borden*, 690 A.2d 575, 575 (N.J. 1997)). While there is no universally-accepted test for establishing a breach of the duty of good faith and fair dealing, "two elements appear to recur with some frequency: (1) the defendant acts in bad faith or with a malicious motive . . . (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Mass. Bay Ins.*, Civ. A. No. 3:09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assos.*, 864 A.2d 387 (N.J. 2005)).

"A plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hill Racquet Club, Inc.*, 864 A.2d at 396); *Graco, Inc. v. PMC Global, Inc.*, No. 08-1304, 2009 WL 904010, at *13 (D.N.J. Mar. 31, 2009) ("A defendant who acts with improper purpose or ill motive may be found liable for breaching the implied covenant if the breach upsets the plaintiff's reasonable expectations under the agreement.").

Here, Plaintiff alleges facts supporting a claim for a breach of the covenant of good faith and fair dealing. Taken in the light most favorable to Plaintiff, Plaintiff alleges he entered into leases with Defendant, Defendant acted with improper motives and destroyed Plaintiff's reasonable expectations when it failed to disclose its intention to charge a Renewal Premium, and

Plaintiff was damaged by paying the Renewal Premiums. (ECF No. 1 ¶¶ 32, 33, 47, 58, 215–25.) Defendant argues "the Lease expressly disclaims AvalonBay's obligation to renew the lease at all, let alone on specific terms." (ECF No. 15-1 at 35.) However, "the discretion afforded to [Defendant] is not unbridled discretion. [Defendant's] performance under the contract is tempered by the implied covenant of good faith and fair dealing and the reasonable expectations of the parties." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001). As the New Jersey Supreme Court has articulated:

> [A] party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract.

*Id.* Whether Defendant's conduct was done "arbitrarily, unreasonably, or capriciously" is a fact-sensitive question that would benefit from discovery. *See Wilson*, 773 A.2d at 1132 (remanding for additional discovery on Defendant's pricing to give plaintiffs an opportunity to "establish[] a jury question on their claim for breach of the implied covenant of good faith and fair dealing," unless defendant "provides an explanation for its pricing that is not arbitrary, capricious, or unreasonable"). Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing is **DENIED**.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  October 31, 2025